UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

AMBER STAR,                                )
                                           )
        PLAINTIFF,                         )
                                           )
VS.                                        )   CASE NO. 12-CV-201-FHM
                                           )
CAROLYN W. COLVIN, Acting                  )
Commissioner of the Social Security        )
Administration,[1]                         )
                                           )
        DEFENDANT.                         )

## OPINION AND ORDER

Plaintiff, Amber Star, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff Amber Star's application for Supplemental Security Income benefits was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Deborah L. Rose was held March 14, 2011. By decision dated April 29, 2011, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on February 13, 2012. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

For the reasons discussed below, the Court AFFIRMS the decision of the Commissioner.

## **Background**

Plaintiff was 44 years old on the alleged date of onset of disability and 53 years old on the date of the denial decision. She has a 9th grade education and subsequently received a General Equivalency Diploma in 1985. Plaintiff has no past relevant work and claims to have been unable to work since June 21, 2003, due to migraines, arthritis, high blood pressure, fibromyalgia, scoliosis, kidney-hypothyroid, stomach condition, and chronic fatigue syndrome. [R. 142]. Plaintiff also claims to suffer from low back pain, hypertension, gastroenteritis, bipolar disorder, depression, anxiety, and personality disorder. [R. 189-201, 246].

2

## The ALJ's Decision

The ALJ determined that the Plaintiff has severe impairments relating to degenerative disc disease of the lumbar spine, obesity, hypertension, migraines, thyroid problems, possible irritable bowel syndrome, dysthymia verses bipolar disorder, anxiety disorder, panic disorder, and post-traumatic stress disorder with borderline personality traits. [R. 22]. The ALJ found that Plaintiff has the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 CFR 416.967(b) in that she is limited to occasional stooping, superficial interaction, and simple tasks.[3] [R. 24]. Based on the testimony of a vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 33-34]. Accordingly, the ALJ determined that the Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) failed at step five of the sequential evaluation process; 2) failed to properly consider the medical source opinions; and 3) failed to perform a proper credibility determination.

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. Social Security Ruling (SSR) 83-10; see CFR § 404.1567(b).

## **Analysis**

### Step Five - Determination

Plaintiff contends that the ALJ committed three errors at step five: 1) that the vocational expert cited the wrong *Dictionary of Occupational Titles* (DOT)[4] number for the job of arcade attendant; 2) that she cannot perform the jobs cited by the vocational expert because they require "significant serving of people;" and 3) she cannot perform the job of fast food worker because it requires constant reaching.

The vocational expert testified that the hypothetical individual would be able to perform the job of parking lot attendant or arcade attendant. [R. 71]. The vocational expert testified that the DOT number for arcade attendant was 311.472-010 which is the DOT number for a fast food worker. The correct DOT number for arcade attendant is 342.667-014. Plaintiff argues that the ALJ's decision should be reversed because the ALJ relied on vocational expert testimony that is inconsistent with the DOT. There is no merit to this argument. Although the vocational expert referred to an incorrect DOT number, Plaintiff has failed to demonstrate how citing to the wrong DOT number but naming the proper job title affected the outcome of this case. The misstatement by the vocational expert does not constitute reversible error.

Plaintiff contends that she cannot perform the jobs cited by the vocational expert and relied upon by the ALJ because the DOT requirement of "significant serving of people" is inconsistent with the Plaintiff's RFC limitation of only superficial interaction with the public. Defendant contends that, particularly with regard to the parking lot attendant job, there is

---

[4] *Dictionary of Occupational Titles, 4th ed., 1991.*

no inconsistency between the RFC limitation as described by the ALJ at the hearing and the full DOT description of the parking lot attendant job.

The DOT provides information on the requirements of various jobs including a fairly specific description of what a person does in performing a particular job.[5] The DOT also provides a more general description of various components of the job including worker functions in relation to "Data," "People," and "Things." The worker function of "People" describes the degree of interaction with other people and is expressed by using an 8 point scale with 8 being the least interaction and 0 being the most interaction. The job of parking lot attendant has a "People" rating of 7 which the DOT describes as: "Serving: attending to the needs or requests of people or animals or the expressed or implicit wishes of people. Immediate response is involved." The DOT also lists "People: 7-Serving S-Significant." The DOT provides the following description of what a person does in performing the parking lot attendant job:

> Parks automobiles for customers in parking lot or storage garage: Places numbered tag on windshield of automobile to be parked and hands customer similar tag to be used later in locating parked automobile. Records time and drives automobile to parking space, or points out parking space for customer's use. Patrols area to prevent thefts from parked automobiles. Collects parking fee from customer, based on charges for time automobile is parked. Takes numbered tag from customer, locates automobile, and surrenders it to customer, or directs customer to parked automobile. May service automobiles with gasoline, oil, and water. When parking automobiles in storage garage, may be designated Storage-Garage Attendant (automotive ser.). May direct customers to parking spaces.

---

[5] *See Dictionary of Occupational Titles*, Parts of the Occupational Definition, 1991 WL 645965. (G.P.O.)

*Dictionary of Occupational Titles* (4th ed. 1991)(DOT), DICOT 915.473-010, 1991 WL 687865 (G.P.O.).

At the hearing the ALJ explained what he meant by superficial interaction with co-workers, supervisors, and the public.

> ALJ: Assuming an individual who was 51 years of age as of her application date for SSI, with the equivalent of a high school education and no past relevant work, if that individual were limited to light work as that's defined in the regulations and that she could lift or carry, push or pull up to 10 pounds frequently, 20 pounds occasionally, could stand or walk six hours a day, could sit six hours daily, but could occasionally stoop, and if she could have superficial interaction with coworkers and supervisors and the public, and if she were limited to simple, routine tasks, would there be jobs such an individual could perform?
>
> VE: And, your honor, when we say superficial, it's like, "Here is your change," and that's it?
>
> ALJ: Right. Not working as a – say, a member of a team where they would have to work together with somebody to complete tasks.
>
> VE: Or with the general public. It's just giving them change and answering a simple question?
>
> ALJ: Yes.

[R. 70-71]. Plaintiff's argument is based on the DOT's general definitions of worker functions in relation to "People." Plaintiff's argument fails to address the ALJ's explanation of what he meant by the RFC limitation of only superficial interaction with the public and fails to discuss the DOT's full description of the parking lot attendant job. When the court considers the ALJ's explanation of the RFC limitation and the full DOT description of the parking lot attendant job it is clear that they are not inconsistent and that Plaintiff can

6

perform the job of parking lot attendant with her RFC.

*Krueger v. Astrue,* 337 Fed.Appx. 758, 761-62 (10th Cir. 2009), cited by Plaintiff, does not require reversal in this case. The *Krueger* court discussed DOT job descriptions for various occupations to determine whether they were consistent with the vocational expert's testimony. The *Krueger* court cited its earlier decision in *Hackett v. Barnhart,* 395 F.3d 1168 (10th Cir. 2005), which also considered the full DOT job description. *Krueger* does not establish a bright line rule that a "People" worker function of 7 is always inconsistent with an RFC limitation of superficial interaction with the public.

Plaintiff argues remand is required because she cannot perform the reaching required for the job of fast food worker. [Dkt. 17, p. 3]. The vocational expert mistakenly testified that the DOT number for arcade attendant was 311.472-010 which is the DOT number for a fast food worker. A reading of the record clearly indicates that the vocational expert did not identify fast food worker as one of the jobs Plaintiff could perform and the ALJ's decision does not mention fast food worker. Thus, there is no merit to this argument. The misstatement by the vocational expert does not constitute reversible error.

<u>Failure to Properly Weigh Medical Evidence</u>

An ALJ is required to weigh the opinions contained in the record. *Social Security Ruling* (*SSR*) 06-03p, 2006 WL 2329939, contains a list of factors that might be considered in the weighing process. Not every factor will apply in every case and it is not necessary for the ALJ to address each factor expressly or at length. What is required is that the ALJ give good reasons for the weight given and that the discussion be sufficient for the claimant and reviewing court to follow the ALJ's reasoning. *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007)(discussing SSR 06-03p factors).

Plaintiff underwent a consultative physical examination on November 4, 2009, which was performed by Dr. Bruce Davis, M.D. [R. 365-374]. Dr. Davis completed a Medical Source Statement of Ability to do Work-Related Activities form where he checked that Plaintiff was limited to sitting, walking, and standing one hour at a time but could sit 8 hours a day, stand for 6 hours, and walk 4 hours. [R. 369]. This differs from the ALJ's RFC which did not include any requirement for hourly change of position. [R. 24]. Dr. Davis also included some postural and environmental limitations, [R. 371-72], that were not included in the RFC. The ALJ gave little weight to Dr. Davis' limitations saying the limitations were not supported by Dr. Davis' objective findings or by the evidence of record as a whole. [R. 28].

Plaintiff argues that the decision should be reversed because the ALJ did not discuss the relevant factors for weighing medical opinions. The ALJ acknowledged that Dr. Davis was a consultative examiner, not a treating physician, thus addressing the treating relationships. The ALJ also addressed the degree of support presented for the opinions and the consistency of the opinions with the record as a whole. The court finds that the ALJ properly weighed the medical opinions and her decision is adequately supported by the record.

Following a lengthy and thorough summary of the medical record, the ALJ stated that she accorded great weight to the opinions of the physicians employed by the State Disability Determination Service (DDS) because they were well supported by the evidence. [R. 31]. Plaintiff asserts that the ALJ failed to relate where the support for these opinions was found. The court finds that the support for the DDS opinions is found throughout the ALJ's decision.

8

Plaintiff argues that the ALJ failed to properly weigh the opinion of Lance Hightower, D.C. Dr. Hightower is a chiropractor who treated Plaintiff for a two year period of time for neck, mid thoracic, and lower lumbar pains arising from a motor vehicle accident. Dr. Hightower indicated in a letter of March, 2011, that Plaintiff responded very well to treatment and was released. He states she has complained of lower back and mid thoracic spine pain. Dr. Hightower opined that Plaintiff "should attain a non-contrast regional MRI to accurately and fully assess both of these spinal regions for high probability of disc lesions." [R. 553]. The ALJ stated that Dr. Hightower is not an "acceptable source" of medical evidence under the regulations and she was not required to give his opinions significant weight. [R. 30-31]. Plaintiff argues that the opinion of Dr. Hightower should be considered as an "other source" and evaluated pursuant to Social Security Ruling (*SSR*) 06-3p, 2006 WL 2329939. [Dkt. 17, p. 6].

The Social Security regulations distinguish between "medical sources" and "other sources." 20 C.F.R. §§ 404.1527, 416.927. SSR 06-3p acknowledges information from "other sources" cannot establish the existence of a medically determinable impairment. Only "acceptable medical sources" can be considered a treating source, establish the existence of a medically determinable impairment, and give a medical opinion. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function, therefore "other sources" must be evaluated. SSR 06-3p, 2006 WL *2329939 \*2.* Evidence from "other sources" like chiropractors and physical therapists, however, may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.*

9

The purpose for using evidence from "other sources" is "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06–03p, 71 Fed.Reg. at 45594 (emphasis added). Dr. Hightower did not give any opinion about how Plaintiff's lower back and mid thoracic spine pain would affect her ability to work. The court finds that the ALJ's decision contains an adequate explanation of how she weighed Dr. Hightower's opinion. The ALJ stated:

> . . .[t]he record in this case reveals no restrictions recommended by the treating doctor. Further, although the claimant has received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature. The claimant is maintained on medication management and no surgery has been recommended. Records from OU physicians generally reveal mild objective signs and findings. An MRI obtained in May 2009 found only minimal degenerative changes at L4-S1.

[R. 31].

Plaintiff also asserts that the ALJ failed to properly evaluate the opinion of the mental consultative examiner. Dr. Jeri Fritz, Ph.D., performed a consultative mental examination of Plaintiff on February 1, 2010. [R. 384-386]. The ALJ accorded great weight to Dr. Fritz's opinion that Plaintiff can perform simple tasks and the claimant had fair ability to relate to others as this was supported by evidence as a whole. The ALJ stated she gave little weight to Dr. Fritz's global assessment of function score (GAF) [6] of 45 which indicates serious impairments. The ALJ stated the GAF score was inconsistent with Dr. Fritz's objective signs and findings and was not supported by the evidence of record. [R. 29].

---

[6] The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.' American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM-IV-TR] at 32. A GAF score of 41-50 indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job. *Id.* [at 34]." *Langley v. Barnhart,* 373 F.3d 1116, 1122 n.3 (10th Cir.2004).

10

The GAF score represents Axis V of the Multiaxial Assessment system. *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental* Disorders 25-30 (4th ed. 1994). The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *Id.* at 25. The GAF rates the client's "psychological, social, and occupational functioning." *Id.* at 30. However, the GAF is not an absolute determiner of ability to work. This is evident in that despite assigning a GAF score of 45, Dr. Fritz expressed the opinion that Plaintiff could work. Dr. Fritz summarized her opinion as follows:

> Ms. Star demonstrated the ability to understand, retain, and follow directions. Her attention and concentration were within normal limits, such that she would be able to perform simple, repetitive tasks. Her ability to relate to others, including co-workers and supervisors was estimated to be fair. She has not been routinely employed for twenty years. She reported experiencing anxiety attacks which may interfere with her work activities. Her ability to handle the stress of day-to-day interactions was judged to be fair. Her prognosis is guarded. She does appear to be capable of handling her financial affairs in her best interest.

[R. 386]. The court finds no error in the ALJ's treatment of Dr. Fritz's opinion.

### **Credibility Determination**

Plaintiff argues that the case should be reversed because the ALJ's credibility determination is not sufficiently thorough, is not supported by substantial evidence, and contains disfavored boilerplate language.

The Tenth Circuit has made it clear that in the absence of a more thorough analysis, the use of boilerplate language is insufficient to support an ALJ's credibility determination. However, the Tenth Circuit has made it equally clear that when the ALJ provides specific reasons for a credibility determination and links the credibility determination to the

evidence, the presence of boilerplate language will not require remand. *Cf. Boehm v. Astrue,* 2013 WL 541067 at *2 (10th Cir. 2013)(rejecting the same argument advanced in this case in another appeal argued by Plaintiff's counsel), *Polson v. Astrue,* 2013 WL 238849 at *2 (10th Cir. 2013)(same), *Strickland v. Astrue,* 2013 WL 3935755 at *7 (10th Cir. 2012)(same).

The court finds that the ALJ supported her credibility findings and appropriately related them to the record. The ALJ's decision shows that she disbelieved Plaintiff's allegations of disabling pain based on a variety of factors. She noted that Plaintiff's description of the severity of the pain has been so extreme as to appear implausible; Plaintiff testified she used marijuana for pain and this has helped keep her from killing herself; Plaintiff alleges her pain is horrific and takes over her entire body; Plaintiff testified that on a scale of one to ten, her pain was a twelve; and Plaintiff did not take Methadone as prescribed and testified she used as little as possible. [R. 31-32]. The ALJ noted that none of Plaintiff's physicians placed any functional restrictions on her activities that would preclude work activity. The ALJ further noted that the record does not reveal that Plaintiff has reported to her doctors that she is suicidal due to pain, other than when she is not taking her medication.

The ALJ also discussed the contradiction between Plaintiff's allegations that her panic attacks are so severe she is unable to breathe, the allegation her depression causes her to not want to get out of bed or want to live, and the fact Plaintiff was referred to Tulsa Center for Behavioral Health but did not seek treatment because she wanted one on one treatment for which she would have to pay. The ALJ cited medical evidence indicating that Plaintiff had full range of motion with no joint tenderness, and medications when taken as

prescribed have been relatively effective in controlling Plaintiff's symptoms. [R. 29-30]. The ALJ further noted that Plaintiff has not received the type of medical treatment one would expect of someone who, as Plaintiff claims, suffers from pain so horrific it takes over her entire body; and that on a scale of one to ten her pain was a twelve. [R. 49, 62]. The ALJ thus noted in her discussion of the medical evidence where Plaintiff's testimony differed from the medical record.

The court is able to follow the ALJ's reasoning and finds that the credibility determination has support in the record. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)(citation, brackets, and internal quotation marks omitted.).

## **Conclusion**

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The Court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 26th day of April, 2013.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE